THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANK A. JOHNSON, Defendant-Appellant.

Third District   No. 3—85—0699

Opinion filed July 7, 1986.

Kathleen Kallan, of Kallan & McSherry, of Joliet, and Barbara J. Badger, of Frankfort, for appellant.

Edward Petka, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE SCOTT delivered the opinion of the court:

The defendant-appellant, Frank A. Johnson, was indicted on charges of murder, felony murder, and two counts of aggravated battery stemming from the death of Judy Moses and injuries to her sister, Quiana Moses. Following a jury trial, Johnson was convicted on all charges and subsequently sentenced to a period of imprisonment of 22 years on the charges of murder and felony murder, and to a concurrent 5-year term of imprisonment for the two counts of aggravated battery.

Frank Johnson, after suffering a stroke on January 11, 1985, and being hospitalized, returned to his home in Bolingbrook on January 27, 1985, to recuperate. Unknown to Johnson during his hospitalization, his wife and codefendant, Vateness Johnson, had agreed to babysit the two children of Isaiah Moses, Judy and Quiana. During the

period of January 12, 1985, to March 11, 1985, the Moses children resided in the Johnson household. Due to Johnson's medical condition, which required continued medication and approximately 16 hours of rest per day, he was separated from the Moses children. The codefendant took primary responsibility for the care of the children and the record reveals that on two occasions Johnson witnessed the codefendant disciplining the children with switches. The record does not indicate that Johnson himself disciplined or hit the Moses children.

On March 11, 1985, the codefendant left the Johnson home and returned later that day at approximately 8 p.m. At approximately 6 p.m., Johnson found Judy Moses tied to a chair in the garage of their home, cut her loose and carried her back to the house. Johnson contends he was unaware that Judy Moses was in the garage prior to that time and claims that after returning her to the house he had a conversation with her and then returned to his bed. At approximately 4 p.m. the next day, March 12, 1985, the codefendant and Johnson brought Judy Moses to Silver Cross Hospital in Joliet, where she was pronounced dead on arrival. Her sister, Quiana Moses, was brought to the hospital at that time.

Johnson and the codefendant were taken into custody the evening of March 12, 1985, and subsequently were charged in this cause. As heretofore stated, verdicts of guilty were returned against Johnson, sentences were imposed thereon and this appeal ensued.

■ In his appeal, Johnson raises a number of errors which he claims denied him his right to a fair trial. The first assignment of error which we will consider is his contention that he was denied a speedy trial in that he was not brought to trial within 120 days as required by the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 103—5(a)).

As noted above, Johnson was taken into custody the evening of March 12, 1985. That evening he was transported to the police station, given *Miranda* warnings and interviewed until approximately 5 a.m. the next day, March 13, 1985. The People contend that Johnson was not taken into custody until March 13 and that jury selection commenced on the 119th day, July 9, 1985. Johnson maintains he was taken into custody the evening of March 12, that July 9 was the 120th day of the 120-day term and, though two panels of jurors were selected and sworn on July 10, jury selection had not proceeded to the point of satisfying the requirements of section 103—5(a) of the Code of Criminal Procedure of 1963.

In *People v. Williams* (1974), 59 Ill. 2d 402, 320 N.E.2d 849, the court held that the requirements of section 103—5 of the Code were

satisfied when the process of selecting the jury for trial had begun on the 119th day, even though jury selection was not completed until the 121st day. In the instant case, as in *Williams*, on July 9 the venire was brought into the courtroom, the prospective jurors were sworn to answer questions of court and counsel, they were informed as to the nature of the case, given the names of the defendants, of the respective counsel and of the witnesses who might be called by the People and defendants during the trial. *Voir Dire* examination then commenced and, upon exhausting the venire present on July 9, the proceedings were continued until the next day, July 10. On July 10, two panels of four jurors were selected and sworn.

We hold that the proceedings of jury selection in the instant case satisfied the requirements of section 103—5(a) of the Code even assuming *arguendo* that Johnson was placed in custody the evening of March 12 and July 9 was the 120th day of the 120-day term. The instant case was called for trial on July 8, 1985. Due to a last-minute motion for substitution of trial judge by the codefendant, which was heard and decided on that day, jury selection proceedings were delayed until the following day, July 9. Further, though the jury-selection proceedings were suspended for approximately one week after July 10 due to the trial court's granting of codefendant's motion for a fitness hearing, the record does not support Johnson's contention that the proceedings were a "sham" to avoid the running of the 120-day term as found in *People v. Perkins* (1980), 90 Ill. App. 3d 975, 414 N.E.2d 110. The jury selection in this case was undertaken in earnest on July 9 to commence trial in order to effectuate section 103—5 of the Code and not to avoid its proscription. Accordingly, Johnson's right to a speedy trial was not violated and the trial court properly denied his motion for discharge.

■ ■ Johnson further contends that he was denied the right to a fair trial by the trial court's refusal to sever his case from the codefendant's. It is fundamental that a defendant is entitled to be tried by an unbiased jury and to be judged on the merits of his case. (*People v. Bean* (1985), 109 Ill. 2d 80, 485 N.E.2d 349.) When defendants are jointly indicted, the law generally holds they should be tried together, unless fairness to one of the defendants requires a separate trial to avoid prejudice. (*People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969.) However, if a defendant believes that prejudice will result if he is jointly tried with a codefendant, he may file a pretrial motion for severance. (Ill. Rev. Stat. 1983, ch. 38, par. 114—8.) The defendant must allege more than mere apprehension or prejudice in his motion and the motion must outline to the court how he might be

prejudiced by a joint trial. *People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461.

■■ ■ The trial court, in acting on the defendant's motion, must take into consideration the averments contained in the filed motion, arguments of defendant's counsel, and any other knowledge of the case developed from the proceedings to that point. (*People v. McMullen* (1980), 88 Ill. App. 3d 611, 410 N.E.2d 1174.) A motion for severance, by its very nature, requires the trial court to make a prediction regarding what, if any, prejudice may result to the defendant if he were jointly tried. As a general rule, absent an abuse of discretion, the trial court's ruling on a pretrial motion for severance will not be reversed. *People v. Canaday* (1971), 49 Ill. 2d 416, 275 N.E.2d 356.

In the instant case, Johnson filed a pretrial motion for severance alleging two grounds as the basis for granting a separate trial. First, that the codefendant had made prior statements implicating Johnson, thereby interfering with his constitutionally guaranteed right of confrontation. (*Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.) Second, that the defenses of the defendants were totally adverse and antagonistic, in that counsel for the codefendant asserted their defense would be that Johnson functioned as a mastermind in the events that led to the death of Judy Moses and injury to Quiana Moses.

At Johnson's pretrial motion for severance hearing, the codefendant joined in his motion and her counsel represented to the court that his strategy of defense would be consistent with the codefendant's pretrial statements that "this was all Frank's idea." Further, that the implication of Johnson would be the heart of her defense. The trial court, in denying Johnson's motion, ordered the prosecution not to present at trial the admissions of the codefendant which implicated Johnson. Though the trial court's order attempted to alleviate the problem of confrontation in regard to the codefendant's pretrial statements, there remained the problem of eradicating prejudice to Johnson stemming from the antagonistic defense which codefendant's counsel stated he would employ.

■■ This court is mindful that its decision as to the propriety of the trial court's denial of Johnson's motion for severance should not be based on subsequent events which occurred during the trial. However, the record is replete with instances which illustrate resulting prejudice to Johnson as a result of the trial court's denial of his motion for severance. During the course of the trial, conduct by the prosecution, *e.g.*, elicitation of an incomplete statement given police by Johnson, and codefendant's counsel, *e.g.*, prejudicial cross-examination

of a People's witness and prejudicial closing argument, elicited on two occasions motions for mistrial and a renewal of Johnson's motion for severance. On each of these occasions the court denied Johnson's motions and attempted to cure any resulting prejudice through instructions and admonitions to the jury. These events serve to illustrate the prejudice which results when a motion for severance is not granted at the earliest possible point.

In the recent case of *People v. Bean* (1985), 109 Ill. 2d 80, 95, 485 N.E.2d 349, 356, the court, in reviewing whether a defendant and a codefendant's defenses were so antagonistic as to require severance, stated: "*[A]ny* set of circumstances which deprives *a* defendant of a fair trial is sufficient to require severance. There is no requirement that the prejudice must be symmetrical." (Emphasis in original.) (*People v. Braune* (1936), 363 Ill. 551, 2 N.E.2d 839.) In the instant case, the circumstances presented to the trial court in Johnson's motion for severance plus the ensuing arguments presented by Johnson and codefendant's counsel at the hearing met the threshold test of antagonistic defenses requiring severance. The trial court's refusal to sever Johnson's case from the codefendant denied him the right to a fair trial.

As noted above, Johnson alleges additional errors in the record of this trial; however, our disposition of this case in regard to the issues of discharge pursuant to the 120-day Code requirement and severance renders it unnecessary for us to consider these contentions as they are not likely to recur in a new trial.

Finally, the People filed on April 1, 1986, a motion to strike portions of Johnson's reply brief which referenced the record in a case other than the instant case. The motion was received by this court on April 2, 1986. In view of this court's reversal and remand of the instant case for a new trial based on the foregoing issues, a ruling on the People's motion will not be necessary.

Based on the foregoing, the judgment of the circuit court of Will County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

STOUDER and WOMBACHER, JJ., concur.